IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDWIN GUS SCHNEIDER § | | |
| TDCJ-CID #867105 § | | |
| v. § | | C.A. NO. C-12-233 |
| § | | |
| JIM KAELIN, ET AL. § | | |

**OPINION AND ORDER TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a pro se prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for summary judgment. (D.E. 51). Plaintiff has submitted a response in opposition. (D.E. 67). For the reasons stated herein, defendants' motion is granted.

**I. JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Pursuant to plaintiff's and defendants' consent, (D.E. 13; D.E. 24; D.E. 26), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 14); see also 28 U.S.C. § 636(c).

**II. BACKGROUND**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"); however, at the time of the incident that forms the basis of this action, he had been confined at the Nueces County Jail on a bench warrant for a robbery charge. He filed this action on July 17, 2012, alleging that, on April 4, 2012, defendants used excessive force against him, naming (1) Jim Kaelin, the Nueces County Sheriff; and (2) Lieutenant H. Gomez, a correctional officer at the jail, as defendants. (D.E. 1).

On April 4, 2012, at approximately 10:00 a.m., plaintiff was in the #10 holding cell at the Nueces County Jail. A dispute arose between Lieutenant Gomez and plaintiff when she denied

him a telephone call. In response, plaintiff kicked the cell door. She then told him that, because he kicked the door, both his telephone and shower privileges were denied, and that he could not have his legal materials. In response to these restrictions, plaintiff again kicked the cell door.

Thereafter, Lieutenant Gomez, along with other members of the "jet team," identified as Officers Haller, Martinez, and Sorenson, approached plaintiff's cell. When plaintiff saw the officers, he moved to the back of the cell, faced the back wall, and went down on both knees with his hands behind his back. Lieutenant Gomez did not give him any instructions to follow or issue any warnings. The officers then entered the cell and slammed plaintiff into the back wall, while hitting him with their fists on his head, neck and knees. Two officers took him to the ground while a third officer placed restraints on his arms and legs. Plaintiff, who has hardware in his neck from a prior surgery, told the officers that they were causing him pain, but they still hit him on the neck during the use of force.

Following the use of force, plaintiff was taken to the infirmary where he was seen by a nurse who took his blood pressure and heart-rate, and then released him. Approximately one week later, he was seen in the infirmary for continuing pain, and he was prescribed pain medication and x-rays were taken. The x-rays of his neck did not reveal a fracture; however, he continues to experience a stinging sensation in his neck with any movement following the use of force. Moreover, he is concerned that he has suffered a slipped disc or nerve damage, and he wants an MRI.[1]

On April 12, 2012, plaintiff filed a grievance with jail officials complaining about the

---

[1] Plaintiff previously testified that he intends to sue certain jail medical personnel for deliberate indifference to his serious medical needs arising from the use of force incident, but he is not bringing those claims in this action because he has not yet exhausted his administrative remedies.

incident and asking for an investigation into the use of force. He also requested that Lieutenant Gomez be enjoined from having any further contact with him. In an April 30, 2012 response, plaintiff was advised that the matter was still being investigated. On June 12, 2012, a final response was issued denying his grievance as unfounded. (D.E. 51-11, at 5-6).

At a Spears[2] hearing, plaintiff testified that he wanted to name as defendants all of the officers that participated in the use of force. His request was construed as a motion for leave to amend his complaint to name additional defendants, and was granted.

For relief, plaintiff wants criminal charges filed against the officers and those responsible. Moreover, he seeks medical care, including an MRI of his neck, as well as $10,000 for pain and suffering.

On August 21, 2012, an order was entered retaining certain claims but dismissing others. Specifically, plaintiff's excessive force claims against Lieutenant Gomez, Officer Haller, Officer Martinez, and Officer Sorenson were retained, while his claims against defendant Kaelin as well as his retaliation claims were dismissed. (D.E. 15). On January 25, 2013, defendants filed a motion for summary judgment. (D.E. 51). On March 17, 2013, plaintiff filed a response in opposition. (D.E. 67).

### III.  DISCUSSION

**A.     The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings) (citation omitted).

3

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, the Court may only consider affidavits made on personal knowledge, which set forth "such facts as would be admissible in evidence, and [show] affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the

nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

However, the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005) (citation omitted). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. Id. (citation omitted). Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

**B.    Defendants' Motion For Summary Judgment Is Granted.**

Defendants seek summary judgment on these claims on the basis that plaintiff has failed to show a constitutional violation occurred, and that, regardless, they are entitled to qualified immunity.

**1.    Defendants are entitled to qualified immunity.**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a

plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). First, the plaintiff must show that the defendants committed a constitutional violation under current law. Id. (citations omitted). Second, he must show that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time the events of which plaintiff complains occurred. Id. (citations omitted). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

        i.      **Step 1–Constitutional violation**.

To prevail on an Eighth Amendment excessive force claim, the central question that must be resolved is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citation omitted); accord Baldwin v. Stalder, 137 F.3d 836, 838 (5th Cir. 1998) (citing Hudson). Thus, unlike a "conditions of confinement" claim for which an inmate only has to establish that a prison official acted with deliberate indifference, an excessive force claim requires a prisoner to establish that the defendant acted maliciously and sadistically. Porter v. Nussle, 534 U.S. 516, 528 (2002) (discussing Hudson).

In determining whether an Eighth Amendment excessive force claim has been established, courts are to consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of a forceful response; and (5)

the extent of the injury suffered. Hudson, 503 U.S. at 7 (citation omitted); accord Baldwin, 137 F.3d at 838-39; Shabazz v. Lynaugh, 974 F.2d 597, 598 (5th Cir. 1992) (per curiam). In applying the Hudson factors, courts must remember "that prison officials 'may have had to act quickly and decisively.'" Baldwin, 137 F.3d at 840 (citation omitted). Moreover, "[t]he amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." Id. (citation omitted).

The Fifth Circuit noted that in Hudson, the Supreme Court "placed primary emphasis on the degree of force employed in relation to the apparent need for it, as distinguished from the extent of the injury suffered." Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999) (citing Hudson, 503 U.S. at 7). The physical injury suffered as a result of the excessive force must be more than *de minimis*, but need not be significant, serious, or more than minor. Id. at 924. A *de minimis* use of force is not constitutionally recognizable as long as it is not "'repugnant to the conscience of mankind.'" Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (quoting Hudson, 503 U.S. at 10). In Siglar, the Fifth Circuit found *de minimis* plaintiff's injuries consisting of a sore, bruised ear that lasted three days and did not require medical care. Id.; see also Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (holding that "[a] physical injury is ... [a] condition requiring treatment by a medical care professional"). However, in Gomez, the Fifth Circuit denied the defendants' motion for summary judgment because Gomez alleged that he had suffered cuts, scrapes and contusions to his head and face that required medical attention, and the defendants' summary judgment motion was not supported by any affidavit or deposition testimony from medical personnel. See 163 F.3d at 922, 925.

Here, the uncontested facts establish that plaintiff disrupted prison operations by

repeatedly kicking his cell door, creating a need for the use of force. In his grievance, he admits that he "did kick the holding cell door" after he was told to stop. (D.E. 51-11, at 6-7). Lieutenant Gomez testifies that leading up to the incident she warned him several times that if he did not stop kicking his cell door he would be restrained. Nonetheless, he did not stop. Because his conduct posed a threat to his own safety and a disruption to other inmates, she ordered officers in the surrounding area to restrain him so that he could calm down.

Although plaintiff claims that he did not resist and that defendants beat him in the course of restraining him, the video recording of the incident reveals a different version of events. The footage shows that when defendants entered the cell, plaintiff kneeled down facing the back wall with his arms raised. Defendants then restrained him by lying him on the ground and handcuffing his hands behind his back. The entire incident lasted about thirty seconds, in part because plaintiff appears to have resisted putting his arms behind his back once on the ground. At no point did defendants beat him and the use of force in the video is reasonable.

Finally, plaintiff's medical records and reports by his physicians show that he did not suffer any additional injury as a result of the incident. (D.E. 51-11, at 25-26). To the extent he feels pain in his neck, this is to be expected from his neck surgery and hardware. Id. Accordingly, any physical injury suffered by plaintiff is *de minimis*, indicating that defendants used reasonable force. See Siglar, 112 F.3d at 193-94 (extremely minor injury insufficient to support excessive force claim and bruised ear from twisting constituted *de minimis* injury); Whitley v. Albers, 475 U.S. 312, 321 (1986) (citations omitted) (courts may look at seriousness of injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is

tantamount to a knowing willingness that it occurred.").

### ii. Step 2–Objective reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendant's actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, plaintiff has failed to establish the violation of a constitutional right. Accordingly, defendants are entitled to the defense of qualified immunity. Saucier, 533 U.S. at 201.

In the alternative, under the second step of the qualified immunity analysis, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). Even officers who interpret the law mistakenly but reasonably are entitled to immunity. See Anderson, 483 U.S. at 641. Indeed, prison officials "are entitled to wide-ranging deference" in handling disturbances and inmates who refuse to obey orders. Baldwin, 137 F.3d at 840.

The Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders. See Baldwin, 137 F.3d at 840-41; Thomas

v. Comstock, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam) (unpublished). In Baldwin, the plaintiff along with eighteen other inmates were on a bus being transferred to another prison. 137 F.3d at 838. While on the bus, "some of the inmates ... began jumping on the seats, spitting at the officers outside the bus, rocking the bus, and otherwise causing a disturbance." Id. After ignoring three orders to stop the disturbance, a brief burst of mace was fired into the bus and afterward the inmates were not allowed to wash it off until after reaching their destination three hours later. Id. The Fifth Circuit determined that the defendants did not use excessive force in maintaining order and security under these circumstances. Id. at 840-41.

Similarly, in Thomas, the plaintiff refused an order to leave his cell as well as a subsequent order to submit to hand restraints and a transfer to a new housing assignment. 222 F. App'x at 440-41. He was warned that he was going to be sprayed with mace unless he left his cell, but still refused to comply. Id. Consequently, he was sprayed with mace for about two seconds. Id. The Fifth Circuit again viewing the defendant's actions as a whole determined that there was no excessive force applied. Id. at 441 ("'a good-faith effort to maintain or restore discipline' does *not* give rise to an Eighth Amendment violation") (emphasis in original).

In this case, defendants faced an inmate who was refusing to obey orders to stop kicking his cell door, which disturbed and excited other inmates and posed a threat to his own safety, thereby creating a security problem. Inmates do not have a right to cause disturbances creating a security problem. Pursuant to Fifth Circuit precedent, defendants would be authorized to use mace on an inmate to restore order and maintain security. Restraining plaintiff in the manner in which they did was a less forceful option than using mace, and therefore defendants' conduct was reasonable in light of clearly established law. Accordingly, defendants are entitled to

qualified immunity.

### 2. Plaintiff has failed to show a constitutional violation.

Plaintiff has failed to establish a constitutional violation for the purposes of qualified immunity. For the same reasons, defendants are entitled to summary judgment because plaintiff has failed to establish a genuine fact issue regarding his excessive force claim.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, (D.E. 51), is granted and plaintiff's complaint, (D.E. 1), is dismissed.

ORDERED this 9th day of April 2013

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE